**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| VITAMIN SHOPPE INDUSTRIES INC.,<br><br>                              Plaintiff,<br><br>-against-<br><br>SEEGER WEISS LLP,<br><br>                              Defendant. | Docket No. 13-cv-8333 (PAC) |

-----------------------------------------------------------------------------------------------------------------

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM**
**AND FOR LACK OF SUBJECT MATTER JURISDICTION**

-----------------------------------------------------------------------------------------------------------------

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700
*Attorneys for Defendant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 2

ARGUMENT ......................................................................................................................... 3

Vitamin Shoppe's Complaint Fails To State A Claim And Its
Injunctive Relief Claims Are Both Legally Insufficient And Moot .................................. 3

    A.    Applicable Standards ......................................................................................... 3

    B.    Seeger Weiss Has Not Infringed on The Vitamin Shoppe's Trademark
           Under Either § 32 of the Lanham Act or Common Law ........................................ 4

          i)    No Reasonable Consumer Could Be Confused That The
                  Website Was Affiliated With Or Sponsored By Vitamin Shoppe ............... 7

          ii)    Seeger Weiss's Use Of Metatags
                  Does Not Constitute Infringement ................................................................ 12

    C.    Seeger Weiss Did Not Engage In Unfair Competition Under Either
           § 43 Of The Lanham Act Or Common Law ...................................................... 13

    D.    Fair Use Bars Vitamin Shoppe's Federal and New York Dilution Claims ............. 15

    E.    Vitamin Shoppe's Marks Are Not Famous .......................................................... 17

    G.    Seeger Weiss Did Not Engage In Cybersquatting
           Under § 43(d) Of The Trademark Act ................................................................ 20

    H.    Vitamin Shoppe's Claim For A Permanent Injunction Is Moot ............................ 24

Conclusion ........................................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Cases**

*1-800 Contacts, Inc. v. Whenu.com, Inc.*, 414 F.3d 400 (2d Cir. 2005) ........................................ 5
*Allied Interstate LLC, v. Kimmel & Silverman P.C.*,
    2013 WL 4245987 (S.D.N.Y. Aug. 12, 2013)..................................................... 14, 15
*Alzheimer's Foundation of America, Inc. v. Alzheimer's Disease & Related Disorders
    Association, Inc.*, 796 F.Supp.2d 458 (S.D.N.Y. 2011)............................................ 14
*Ascentive, LLC v. Opinion Corp.*, 842 F.Supp.2d 450 (E.D.N.Y. 2011)................................. 5, 10
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................ 3
*Audi AG v. Shokan Coachworks, Inc.*, 592 F.Supp.2d 246 (N.D.N.Y. 2008) ............................... 7
*Bihari v. Gross*, 119 F.Supp.2d 309 (S.D.N.Y. 2000).............................................. 10, 23
*Burndy Corp. v. Teledyne Industries, Inc.*, 748 F.2d 767 (2d Cir. 1984) ................................ 24
*Cargill International S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012 (2d Cir. 1993)......................... 4
*Chambers v. Time Warner*, 282 F.3d 147 (2d Cir. 2002) ............................................. 3, 14
*Cintas Corp v. Unite Here*, 601 F.Supp.2d 571 (S.D.N.Y. 2009),
    *aff'd*, 355 Fed.Appx. 508 (2d Cir. 2009) ..................................................... 10, 21
*Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) .............................. 4
*DeVere Group GmbH v. Opinion Corp.*, 877 F.Supp.2d 67 (E.D.N.Y. 2012)............................... 10
*Dow Jones & Co. v. International Securities Exchange, Inc.*, 451 F.3d 295 (2d Cir. 2006).......... 8
*EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos Inc.*,
    228 F.3d 56 (2d Cir. 2000)................................................................... 14
*Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503 (2d Cir. 1997) ................................... 5, 7
*Fox v. Board of Trustees of State University of N.Y.*, 42 F.3d 135 (2d Cir. 1994) ..................... 4
*Friesland Brands, B.V. v. Vietnam National Milk Co.*, 228 F.Supp.2d 399 (S.D.N.Y. 2002) ..... 19
*Frisone v. Pepsico, Inc.*, 369 F.Supp.2d 464 (S.D.N.Y. 2005)........................................ 4
*Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137 (2d Cir. 1997) .......................... 5
*Gruner + Jahr USA Publishing v. Meredith Corp.*, 991 F.2d 1072 (2d Cir. 1993) ...................... 5
*Illinois National Insurance Co. v. Tutor Perini Corp.*,
    2011 WL 4712079 (S.D.N.Y. Oct. 7, 2011) ...................................................... 4
*JA Apparel Corp. v. Abboud*, 682 F.Supp.2d 294 (S.D.N.Y. 2010)..................................... 16
*Lang v. Retired Living Publishing Co.*, 949 F.2d 576 (2d Cir. 1991).................................. 5
*Louis Vuitton Malettier v. Dooney & Bourke*, 561 F.Supp.2d 368 (S.D.N.Y. 2008)............. 18, 19
*Louis Vuitton Malettier v. Dooney & Bourke, Inc.*, 454 F.3d 108 (2d Cir. 2006)............ 14, 16, 17
*Luv N'Care, Ltd. v. Regent Baby Products Corp.*, 841 F.Supp.2d 753 (S.D.N.Y. 2012) ...... 19, 20
*Merck & Co. v. Mediplan Health Consulting Inc.*, 425 F.Supp.2d 402 (S.D.N.Y. 2006).............. 7
*Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254 (2d Cir. 1987)........................... 6
*Mobileye, Inc. v. Picitup Corp.*, 928 F.Supp.2d 759 (S.D.N.Y. 2013)................................ 17
*Montblanc-Simply v. Aurora Due S.r.l.*, 363 F.Supp.2d 467 (E.D.N.Y. 2005) ........................ 6
*Mosely v. V Secret Catalogue*, 537 U.S. 418 (2003) ................................................ 16
*Mr. Water Heater Enterprises, Inc. v. 1-800-Hot Water Heater, LLC*,
    648 F.Supp.2d 576 (S.D.N.Y. 2009)............................................................ 6
*N.Y. Stock Exchange, Inc. v. New York, New York Hotel LLC*, 293 F.3d 550 (2d Cir. 2002)...... 18
*Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43 (2d Cir. 2000)................................... 6
*Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.*, 166 F.3d 65 (2d Cir. 1999) ............ 7
*Patsy's Italian Restaurant, Inc. v. Banas*, 658 F.3d 254 (2d Cir. 2011)................................ 24

*Polaroid Corp. v. Polarad Electrics Corp.*, 287 F.2d 492 (2d Cir. 1961).....................................6
*Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123 (2d Cir. 2009)....................................................12
*Roach v. Morse*, 440 F.3d 53 (2d Cir. 2006) ..............................................................................24
*Savin Corp. v. The Savin Group*, 391 F.3d 439 (2d Cir. 2004) ................................. 11, 17, 20, 22
*Site Pro-1, Inc. v. Better Metal, LLC*, 506 F.Supp.2d 123 (E.D.N.Y. 2007).............................13
*Sporty's Farm LLC v. Sportsman's Market, Inc.*, 202 F.3d 489 (2d Cir. 2000).....................21, 22
*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97 (2d Cir. 2009)...........................6
*TCPIP Holding Co. v. Haar Communications, Inc.*, 244 F.3d 88 (2d Cir. 2001) ...................7, 18
*Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010) ...............................6, 7, 8, 12
*Time, Inc. v. Petersen Publishing Co.*, 173 F.3d 113 (2d Cir. 1999)........................................5, 6
*U.S. Bank N.A. v. Bank of America, N.A.*, 2012 WL 6136017 (S.D.N.Y. Dec. 11, 2012) .............3
*U.S. Polo Association, Inc. v. PRL USA Holdings, Inc.*, 800 F.Supp.2d 515 (S.D.N.Y. 2011) ... 24
*Web-Adviso v. Trump*, 927 F.Supp.2d 32 (E.D.N.Y. 2013)........................................................21
*Wi-Lan v. LG Electronics, Inc.*, 2011 WL 3269075  (S.D.N.Y. Aug. 2, 2011)............................7
*Wilson v. Merril Lynch & Co.*, 671 F.3d 120 (2d Cir. 2011)........................................................3
*Yurman Studio, Inc. v. Castaneda*, 591 F.Supp.2d 471 (S.D.N.Y. 2008).................................17

**Statutes**
15 U.S.C. § 1114......................................................................................................................4
15 U.S.C. § 1115(b) ................................................................................................................6
15 U.S.C. § 1125(a)(1)(A) ......................................................................................................5
15 U.S.C. § 1125(c)(1)...........................................................................................................16
15 U.S.C. § 1125(c)(3)...........................................................................................................16
15 U.S.C. § 1125(d) ........................................................................................................21, 22
15 U.S.C. § 1127......................................................................................................................5
15 U.S.C. § 1165......................................................................................................................6
N.Y. Gen. Bus. Law § 360-l ..................................................................................................17

**Rules**
Fed.R.Civ.P. 12(b)(1)..............................................................................................................4
Fed.R.Civ.P. 12(b)(6)..............................................................................................................3

## PRELIMINARY STATEMENT

Defendant Seeger Weiss LLP ("Seeger Weiss") moves to dismiss the complaint of Plaintiff, Vitamin Shoppe Industries, Inc. ("Vitamin Shoppe") with prejudice.  Simply stated, this action is little more than a heavy-handed, *in terrorem* suit that Vitamin Shoppe brought in response to a class action complaint against Vitamin Shoppe in the District of New Jersey in which Seeger Weiss is one of the Class Counsel.  That action alleged that Vitamin Shoppe's True Athlete Training Formula dietary supplement did not provide the touted health benefits. *See Hodges v. Vitamin  Shoppe Inc.*, Civil Action No. 13-3381 (SRC)(CLW) (D.N.J.), Docket Entry 1.[1]

The *Hodges* complaint was filed on May 30, 2013.  Seeking information relating to other Vitamin Shoppe sports-related nutritional supplements sold under the tradename BodyTech, Seeger Weiss set up a website in August 2013, using the domain name *vitaminshoppeprotein.com*.  (Complaint, Ex. 4).  The *vitaminshoppeprotein.com* website plainly never offered products for sale but, rather, sought information from purchasers of BodyTech products regarding the efficacy of the product.   Vitamin Shoppe made no pre-suit demand that the website be taken down, instead opting to file the instant suit and then issue a press release several weeks later.  As soon as this retaliatory suit was filed, Seeger Weiss immediately and unilaterally ordered that the website be taken down and offered to transfer the domain name to Vitamin Shoppe, an offer that remains open and to which Vitamin Shoppe has failed to respond. *See* Declaration of Christopher A. Seeger dated February 10, 2014.

---

[1]     The *Hodges* action was dismissed without prejudice and with leave to amend on January 15, 2014.  *Hodges* Docket Entries 31-32.  Seeger Weiss does not intend to file an amended complaint.

For the reasons set forth below, Vitamin Shoppe's claims should be dismissed with prejudice because they are legally insufficient, regardless of any amended complaint Vitamin Shoppe might file.  The website created by Seeger Weiss that gave rise to Vitamin Shoppe's lawsuit, which sought information from *dissatisfied* purchasers about certain Vitamin Shoppe products, could not plausibly have confused consumers that the site was in any way affiliated with Vitamin Shoppe or have diluted Vitamin Shoppe's trademark.  Accordingly, the Court should dismiss the suit with prejudice.

## STATEMENT OF FACTS

Vitamin Shoppe is in the business of, *inter alia*, selling and marketing nutritional products, including vitamins, minerals, nutritional supplements, herbs, sports nutrition formulas, homeopathic remedies, and health and beauty aids.  Complaint, ¶ 10.  Seeger Weiss is a nationally known law firm specializing in mass tort and class action litigation, including consumer fraud actions involving alleged nutritional products that do not provide the benefits for which they are advertised and sold.   Vitamin Shoppe's complaint alleges claims for: (1) trademark infringement under § 32 of the Lanham Act; (2) unfair competition under § 43 of the Lanham Act; (3) dilution under § 43(c) of the Trademark Act; (4) cybersquatting under § 43(d) of the Trademark Act; (5) common law trademark infringement and unfair competition; and (6) trademark dilution under New York General Business Law § 360-1.[2]

As is noted above, this lawsuit is not the first interaction between Vitamin Shoppe and Seeger Weiss.  Prior to the filing of this action, Seeger Weiss filed suit against Vitamin Shoppe in New Jersey relating to another product, True Athlete Training Formula.  The website in

---

[2]      Vitamin Shoppe alleges that Seeger Weiss copied photographs of bottles of BodyTech from its own website without authorization (Complaint, ¶ 53), and also alleges that the website disparaged Vitamin Shoppe's products.  (Complaint, ¶¶ 59, 65).  Notably, however, Vitamin Shoppe has *not* made claims for copyright infringement or product disparagement.

question here, *vitaminshoppeprotein.com*, sought information from dissatisfied customers who had purchased BodyTech, a protein supplement that allegedly does not provide the nutritional benefits claimed by Vitamin Shoppe.  The website did not offer any goods for sale, nor could a reasonable person possibly have interpreted the website as offering any goods for sale.  Likewise, no reasonable person could believe that there was any affiliation between Seeger Weiss and Vitamin Shoppe.  The website plainly questioned whether the BodyTech product worked as advertised and that consumers of the products may have legal rights against Vitamin Shoppe.  Accordingly, no reasonable person could believe that Vitamin Shoppe was soliciting disgruntled customers to sue itself.

## ARGUMENT

### VITAMIN SHOPPE'S COMPLAINT FAILS TO STATE A CLAIM AND ITS INJUNCTIVE RELIEF CLAIMS ARE BOTH LEGALLY INSUFFICIENT AND MOOT

#### A.    Applicable Standards

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a claim for "failure to state a claim upon which relief can be granted."  When considering a Rule 12(b)(6) motion, a district court must accept the factual allegations in the Complaint as true while viewing them in the light most favorable to the non-moving party.  *Wilson v. Merril Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On a motion to dismiss, the Court may consider not only the allegations in the complaint, but also any documents attached as exhibits or referenced in the complaint and relied upon by the plaintiff.  *Wilson*, 671 F.3d at 123; *Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002); *U.S. Bank N.A. v. Bank of America, N.A.*, 2012 WL 6136017, at *1 (S.D.N.Y. Dec. 11, 2012).

The Court may dismiss a complaint with prejudice if the plaintiff is unable to allege any facts to support its claim. *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

On a Rule 12(b)(1) motion to dismiss, the Court is free to consider matters outside the Complaint. *E.g.*, *Cargill International S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1019 (2d Cir. 1993); *Frisone v. Pepsico, Inc.*, 369 F.Supp.2d 464, 469-70 (S.D.N.Y. 2005) ("no presumptive truthfulness attaches to the complaint's jurisdictional allegations"; court may consider evidence in deciding Rule 12(b)(1) motion to dismiss) (citing cases; internal quotation marks omitted).[3]

For the reasons set forth below, Vitamin Shoppe's complaint fails to allege any valid claims for trademark infringement, unfair competition, cybersquatting, or otherwise. The website could not possibly have confused consumers, and Seeger Weiss was not cybersquatting because it did not obtain the *vitaminshoppeprotein.com* domain name with the intent of holding it for ransom from Vitamin Shoppe. Under no plausible view could the website be seen as infringing upon Vitamin Shoppe's protectable interests in its trademark.

Moreover, Vitamin Shoppe's action should be with prejudice because, regardless of what additional facts Vitamin Shoppe might weave into an amended complaint, it simply cannot rewrite history and alter the contents of the website.

**B.      Seeger Weiss Has Not Infringed On The Vitamin Shoppe's Trademark Under Either § 32 Of The Lanham Act Or Common Law**

The Lanham Act, at 15 U.S.C. § 1114, provides that in order to prevail on a trademark infringement claim, a plaintiff must establish that (1) it has a valid mark that is entitled to

---

[3]      The mootness of Vitamin Shoppe's injunctive relief claims, discussed below in section H, implicates the justiciability of those claims. *E.g.*, *Fox v. Board of Trustees of State University of N.Y.*, 42 F.3d 135, 144 (2d Cir. 1994) ("[O]nce a case is moot, it is no longer justiciable in federal court and must be dismissed."). The justiciability of a claim is properly the subject of a motion to dismiss under Rule 12(b)(1). *E.g.*, *Illinois National Insurance Co. v. Tutor Perini Corp.*, 2011 WL 4712079 (S.D.N.Y. Oct. 7, 2011) ("Justiciability is properly raised on a motion under Rule 12(b) (1).").

protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale . . . or advertising of goods or services, (5) without plaintiff's consent. *See 1-800 Contacts, Inc. v. Whenu.com, Inc.*, 414 F.3d 400, 406-07 (2d Cir. 2005); *see also Time, Inc. v. Petersen Publishing Co.*, 173 F.3d 113, 117 (2d Cir. 1999); *Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997). Additionally, "the plaintiff must show that defendant's use of that mark 'is likely to cause confusion . . . as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [plaintiff].'" *1-800 Contacts, Inc.*, 414 F.3d at 407 (citing 15 U.S.C. § 1125(a)(1)(A)); *see also Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1508-09 (2d Cir. 1997); *Gruner + Jahr USA Publishing v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993). "The Lanham Act seeks to prevent consumer confusion that enables a seller to pass his goods off as the goods of another. It protects only against mistaken purchasing decisions and not against confusion generally." *Ascentive, LLC v. Opinion Corp.*, 842 F.Supp.2d 450, 460 (E.D.N.Y. 2011) (quoting *Lang v. Retired Living Publishing Co.*, 949 F.2d 576, 582-83 (2d Cir. 1991)). A trademark is considered to have been used in commerce in connection with a service when "it is used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127.

Courts use a two-pronged test to determine whether a trademark has been infringed. The first part of the test determines whether plaintiff's mark "is valid and entitled to protection," and the second part of the test considers whether "defendant's use of the mark is likely to cause confusion as to the origin of the goods." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102 (2d Cir.

2010).[4]   As to the second prong, the Second Circuit employs a multi-factor test in order to determine the likelihood of confusion.  The eight factors to be considered are:  (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product[5]; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.  *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009) (citing *Polaroid Corp. v. Polarad Electrics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)).  "The application of the *Polaroid* test is not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused."  *Starbucks*, *id.*; *see also Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 45-46 (2d Cir. 2000) ("[T]he evaluation of the *Polaroid*

---

[4]     Vitamin Shoppe alleges that its "Vitamin Shoppe" and "BodyTech" marks are incontestable, as provided in 15 U.S.C. § 1165.  (Complaint, ¶¶ 22, 26, 31).  An incontestable trademark registration is conclusive proof as to the validity, registration, and ownership of the mark, and the registrant's exclusive right to use the mark in commerce.  15 U.S.C. § 1115(b).  Even with an incontestable mark, however, the plaintiff must still demonstrate a likelihood of consumer confusion in order to succeed on a claim for trademark infringement. *Time*, 173 F.3d at 118; *Mr. Water Heater Enterprises, Inc. v. 1-800-Hot Water Heater, LLC*, 648 F.Supp.2d 576, 584 (S.D.N.Y. 2009).  Likewise, a registered mark becoming uncontestable, while relevant to determining the strength of the mark, gives the owner of the mark no greater substantive rights against infringement than the owner of an unregistered mark.  *Time*, 173 F.3d at 118; *Montblanc-Simply v. Aurora Due S.r.l.*, 363 F.Supp.2d 467, 478 (E.D.N.Y. 2005) ("However, the determination that a mark is valid and incontestable does not necessitate a finding that the mark is strong and entitled to an expansive breadth of protection under the Lanham Act.").

[5]     Vitamin Shoppe correctly noted in its pre-motion conference letter that likelihood of confusion, not competition, is the test of trademark infringement, citing *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 257-58 (2d Cir. 1987).  That being said, competition between the parties is a relevant consideration.  *Polaroid* factors 3 and 4 relate to whether the parties are either actual or potential competitors.

factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins.")

> ### i) No Reasonable Consumer Could Be Confused That The Website Was Affiliated With Or Sponsored By Vitamin Shoppe

Applying the *Polaroid* factors, there is no plausible possibility that a reasonable consumer could be confused that the website was sponsored by or affiliated with Vitamin Shoppe. Concededly, Vitamin Shoppe has a protectable interest in its trademarks[6] (*Polaroid* factor 1) and Seeger Weiss was using Vitamin Shoppe's exact trademarks (*Polaroid* factor 2), but that is where the factors in favor of Vitamin Shoppe end. Under the circumstances, Seeger Weiss was allowed to use Vitamin Shoppe's trademarks to describe Vitamin Shoppe's products.

Under the doctrine of nominative fair use, a "defendant may use a plaintiff's trademark to identify the plaintiff's goods so long as there is no likelihood of confusion about the source of defendant's product or the mark-holder's sponsorship or affiliation." *Tiffany*, 600 F.3d at 102; *see also Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.*, 166 F.3d 65, 73 (2d Cir. 1999).[7] "While a trademark conveys an exclusive right to the use of a mark in commerce in the area reserved, that right generally does not prevent one who trades a branded product from

---

[6] Since Vitamin Shoppe's trademarks are incontestable, Vitamin Shoppe, by definition, has a protectable interest in its marks. *See* n.4. How strong the marks are, however, is another matter. *Id.* At best, "Vitamin Shoppe" is descriptive, because, aside from the archaic English spelling of "shoppe", it describes Vitamin Shoppe's business. *See TCPIP Holding Co. v. Haar Communications, Inc.*, 244 F.3d 88, 93 (2d Cir. 2001) ("The Children's Place" for store selling children's clothing held descriptive mark); *Estee Lauder*, 108 F.3d at 1509.

[7] Although the Second Circuit has not explicitly endorsed the nominative fair use doctrine, *see Tiffany*, 600 F.3d at 102, it has been followed by this and other district courts within this Circuit. *See, e.g., Wi-Lan v. LG Electronics, Inc.*, 2011 WL 3269075, at *26 (S.D.N.Y. Aug. 2, 2011); *Audi AG v. Shokan Coachworks, Inc.*, 592 F.Supp.2d 246, 269-70 (N.D.N.Y. 2008) (collecting cases); *Merck & Co. v. Mediplan Health Consulting Inc.*, 425 F.Supp.2d 402, 413 (S.D.N.Y. 2006). Conceptually, the doctrine of nominative fair use is in accord with well-settled Second Circuit law. *See Tiffany*, 600 F.3d at 102-03.

accurately describing its brand name, so long as the trader does not create confusion by implying an affiliation with the owner of the product." *Tiffany*, 600 F.3d at 103 (quoting *Dow Jones & Co. v. International Securities Exchange, Inc.*, 451 F.3d 295, 308 (2d Cir. 2006)). Nominative fair us exists when, "[f]irst, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Tiffany*, *id.* at 102.

In the instant case, Seeger Weiss did nothing more than reference and describe Vitamin Shoppe and BodyTech on its website. There was nothing to suggest that it was selling Vitamin Shoppe products or that there was any affiliation with Vitamin Shoppe. Applying the nominative fair use test, Vitamin Shoppe and BodyTech are not readily identifiable without use of those trademarks. There is no other way for individuals to know what Seeger Weiss would be referencing without the use of Vitamin Shoppe's trademarks. Vitamin Shoppe and Body Tech are not widely known by some other non-trademarked nickname.[8] Vitamin Shoppe has trademarked the name of the company, so it would be impossible to identify Vitamin Shoppe without using Vitamin Shoppe's registered trademark. Vitamin Shoppe offers a number of nutritional supplements, so no one would know Seeger Weiss was referring particularly to BodyTech without saying "BodyTech". Further, Seeger Weiss made no more use of Vitamin Shoppe's trademarks than was necessary to identify Vitamin Shoppe and Body Tech. Finally, as is set forth below, no reasonable consumer could be confused that there was some type of

---

[8]     It is not as if Seeger Weiss could, for example, talk about "The Big Game" and everyone would know it was referring to the Super Bowl.

affiliation between Seeger Weiss and Vitamin Shoppe or that Vitamin Shoppe somehow sponsored Seeger Weiss' website.

As is clear from an examination of the website (Complaint, Ex. 4),[9] the website belonged to Seeger Weiss, not Vitamin Shoppe. Seeger Weiss was seeking information from *dissatisfied purchasers* of BodyTech. The website explained that, while the proteins contained in BodyTech sound as if they provide a significant benefit, in fact, they provide no benefit at all. The website also clearly *explained* and identified Seeger Weiss as a law firm, not a seller of vitamins. Among other things, the now-defunct website prominently displayed the following: "Unhappy With Purchasing Protein Supplements?"; "Hire a national law firm with a proven track record" and "Why choose the Seeger Weiss law firm?"

Notwithstanding all this, Vitamin Shoppe implausibly alleges that the website "misleads consumers into believing that" Seeger Weiss' website "is associated with, sponsored by, or authorized by Vitamin Shoppe", and, at the same time, claims that the website was created to "lure individuals to its website" where "disparaging statements about Vitamin Shoppe and its BODYTECH protein supplements" were made. Complaint ¶¶ 58, 57. Vitamin Shoppe cannot have it both ways. No reasonable consumer, upon viewing such allegedly "disparaging statements", would believe that Vitamin Shoppe had anything to do with a website designed to advise consumers of their potential right to sue Vitamin Shoppe. Vitamin Shoppe cannot argue, on the one hand, that the website was created with the intent to solicit consumers into seeking information about a potential class action, while also saying that it, in fact, created confusion among consumers that the website was affiliated with or sponsored by Vitamin Shoppe. No

---

[9]     For the Court's convenience, a screenshot copy of the website is annexed hereto as an addendum.

reasonable consumer could plausibly have been confused that the very website that Vitamin Shoppe contends disparaged its products was somehow *affiliated with* Vitamin Shoppe.[10]  *E.g.*, *DeVere Group GmbH v. Opinion Corp.*, 877 F.Supp.2d 67, 72 (E.D.N.Y. 2012) ("Courts have consistently held that so-called "gripe sites" incorporating derogatory or critical terms alongside a company's trade name, in both the domain name and the website contents, do not present a likelihood of confusion for purposes of Section 43(a).") (collecting cases); *Ascentive*, 842 F.Supp.2d at 460-62 (no likelihood of confusion for use of plaintiff's trademarks on pissedconsumer.com website regarding customer complaints about plaintiff); *Cintas Corp v. Unite Here*, 601 F.Supp.2d 571, 579 (S.D.N.Y. 2009), *aff'd*, 355 Fed.Appx. 508 (2d Cir. 2009) (no likelihood of confusion for use of plaintiff's trademark on cintasexposed.org website run by union complaining about unfair trade practices); *Bihari v. Gross*, 119 F.Supp.2d 309, 318-19 (S.D.N.Y. 2000) (no likelihood of confusion that website of disgruntled customer of interior designer used to disparage designer was endorsed by designer).

Applying the remainder of the *Polaroid* factors, Seeger Weiss plainly could not have reasonably caused consumer confusion.  Seeger Weiss is a plaintiff's law firm, while Vitamin Shoppe sells vitamins and other nutritional supplements.  While Vitamin Shoppe may believe that Seeger Weiss' business works at cross purposes to its own, the parties are not even close to being competitive businesses.  Thus, *Polaroid* factor 3 weighs heavily in favor of Seeger Weiss.  There is no evidence that Vitamin Shoppe would ever or could ever "bridge the gap" into Seeger Weiss' business, *i.e.,* extend its nutritional supplement business into the practice of law.  Thus,

---

[10]    Vitamin Shoppe fancifully alleges that Seeger Weiss' website is likely to deceive the public into believing that it is to be used to report adverse events to Vitamin Shoppe and interferes with Vitamin Shoppe's obligation to report adverse events under applicable FDA regulations.  Complaint, ¶¶ 66-68, 75-76.  Seeger Weiss' website cannot reasonably be read as having solicited adverse events for purposes of reporting to the FDA.  *See* Complaint, Ex. 4.

*Polaroid* factor 4 also weighs decidedly in favor of Seeger Weiss.  Nowhere does Vitamin Shoppe plead that there was actual consumer confusion, so *Polaroid* factor 5 likewise weighs heavily in favor of Seeger Weiss. [11]

There is no claim that Seeger Weiss adopted the Vitamin Shoppe marks in bad faith. This factor, *Polaroid* factor 6, "considers whether the defendant adopted its mark with the intention of capitalizing on the plaintiff's reputation and goodwill and on any confusion between his and the senior user's product." *Savin*, 391 F.3d at 460.  Here, Seeger Weiss was not selling vitamins, dietary supplements, or anything else under Vitamin Shoppe's name or any similar name in an attempt to capitalize on the goodwill associated with Vitamin Shoppe's marks. Rather, it was seeking information and offering potential legal services to purchasers of Vitamin Shoppe's products.  Clearly, *Polaroid* factor 6 weighs comfortably in favor of Seeger Weiss. The respective quality of the products, *Polaroid* factor 7, is not even a relevant factor.  Vitamin Shoppe and Seeger Weiss offer completely different products and services.  This is not an instance where a defendant is accused of having passed off its own shoddy goods as plaintiff's first quality goods.  Vitamin Shoppe alleges that Seeger Weiss was representing on its website that Vitamin Shoppe's goods were shoddy, a very different circumstance than that present in *Polaroid* factor 7, and therefore of no moment here.

---

[11]      Vitamin Shoppe has likewise failed to allege internet initial interest confusion with respect to Seeger Weiss' use of its metatags or sponsored searches.  "Such confusion arises when a consumer who searches for the plaintiff's website with the aid of a search engine is directed instead to the defendant's site because of a similarity in the parties' website addresses." *Savin Corp. v. The Savin Group*, 391 F.3d 439, 462, n. 13 (2d Cir. 2004).  "Because consumers diverted on the Internet can more readily get back on track than those in actual space, thus minimizing the harm to the owner of the searched-for site from consumers becoming trapped in a competing site, Internet initial interest confusion requires a showing of intentional deception." *Id.* There are no allegations in the Complaint even close to claiming that Seeger Weiss intentionally deceived consumers.

Finally, *Polaroid* factor 8, too, weighs decidedly in favor of Seeger Weiss. Even if consumers of Vitamin Shoppe products were not considered to be sophisticated individuals, it does not take a sophisticated consumer to figure out that Seeger Weiss was selling something completely different than Vitamin Shoppe and that the Vitamin Shoppe would not be sponsoring a website to explore suing itself.

As for Vitamin Shoppe's claims of common law infringement, "under New York state law, a mark owner may maintain a . . . common law action against a party who engages in unauthorized use of the mark." *Tiffany*, 600 F.3d at 102. "The elements required to prevail on trademark infringement and unfair competition claims under New York common law mirror the Lanham Act" and should be addressed together. *Id.* For the same reasons enumerated above, Vitamin Shoppe fails to state a claim against Seeger Weiss for trademark infringement under the common law. Consequently, this claim also is fatally flawed.

### ii)     Seeger Weiss' Use Of Metatags Does Not Constitute Infringement

Vitamin Shoppe also alleges that Seeger Weiss' use of metatags "cause web search engines to return search results that falsely indicate and mislead consumers into believing that there is a pending lawsuit against Vitamin Shoppe and its BODYTECH protein supplements." Complaint, ¶ 61. It further alleges that Seeger Weiss "purchased from internet search engines search terms that incorporate the term 'Vitamin Shoppe,'" and Vitamin Shoppe Coupon, "including misspellings of the term." *Id.*, ¶¶ 62-63.

A "sponsored search" or "sponsored link" uses search terms in way that causes the sponsor's website to be listed at or near the top of the listings when a computer user searches the appropriate combination of words to find the sponsor's website. *Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 125-27 (2d Cir. 2009). "Metatags" are a list of hidden words on a website

that act as an index, identifying the content of the website for search engines. *Site Pro-1, Inc. v. Better Metal, LLC*, 506 F.Supp.2d 123, 124, n. 2 (E.D.N.Y. 2007).

Vitamin Shoppe's allegations relating to Seeger Weiss' use of sponsored searches or metatags adds nothing to its trademark infringement allegations. The metatags themselves found on Seeger Weiss' website cannot infringe Vitamin Shoppe's trademarks because they are invisible to consumers and, thus, could not possibly confuse them. *Compare* Complaint, Ex. 4 *with id.*, Ex. 5. Likewise, the sponsored search is invisible to the consumer because that is something hidden within the search engine.[12] The *results* of the use of the sponsored searches, *i.e.*, that a person searching the internet would reach the Seeger Weiss site, are discussed above. Vitamin Shoppe claims that the metatags "cause web search engines to return search results that falsely indicate and mislead consumers into believing that there is a pending lawsuit against Vitamin Shoppe and its BODYTECH protein supplements." Complaint, ¶ 31. While that might theoretically cause confusion, it is not confusion that is actionable under the Lanham Act; *i.e.,* it is not confusion that would cause a mistaken purchasing decision, or confusion as to the source of Seeger Weiss' services or Vitamin Shoppe's sponsorship or affiliation with Seeger Weiss' website. From the perspective of a reasonable consumer, it is simply implausible that Vitamin Shoppe would sponsor or be affiliated with a website exploring a potential lawsuit against itself.

**C.   Seeger Weiss Did Not Engage In Unfair Competition Under Either § 43 Of The Lanham Act Or Common Law**

Vitamin Shoppe also alleges that Seeger Weiss engaged in unfair competition under both the Lanham Act and New York common law. Section 43(a) of the Lanham Act acts as "a broad

---

[12]   *Rescuecom* decided the narrow issue of whether sponsored searches constituted a "use in commerce" for purposes of 15 U.S.C. § 1127. 562 F.3d at 127-31. It specifically avoided deciding whether Google's use of the plaintiff's trademark, in fact, caused a likelihood of confusion. *Id.* at 130-31.

federal unfair competition provision." *Chambers*, 282 F.3d at 155.  Therefore, "[w]here there is a claim of consumer confusion [as] to the association of a product or service with another person's trademark, the central inquiry is whether it is likely that 'an appreciable number of ordinarily prudent purchasers' will be misled as to the source or sponsorship of the product or service in question."  *Id.* (quoting *EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 61-62 (2d Cir. 2000)).

To prevail on a Lanham Act claim for unfair competition, "a plaintiff must show:  (1) that it owns a mark deserving of protection, and (2) that the mark is used in such a way as to create a 'likelihood of confusion' as to the source or sponsorship of the defendant's goods or services." *Allied Interstate LLC, v. Kimmel & Silverman P.C.*, 2013 WL 4245987, at *5 (S.D.N.Y. Aug. 12, 2013) (quoting *Alzheimer's Foundation of America, Inc. v. Alzheimer's Disease & Related Disorders Association, Inc.*, 796 F.Supp.2d 458, 465 (S.D.N.Y. 2011)).  Just as trademark infringement under the common law mirrors the Lanham Act, the same is also true of unfair competition claims.  *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 119 (2d Cir. 2006).

The analysis here is similar to that of trademark infringement that was discussed above. The first prong that must be satisfied is the plaintiff's showing that it has a valid mark worthy of protection.  The second prong turns on the plausibility that likelihood of confusion exists.  As stated above, no likelihood of confusion could possibly be found.  In a recent case in this District involving a set of strikingly similar facts and allegations, the Court determined that while defendants were "soliciting complaints about Plaintiff's services and inviting searchers and visitors to Defendants' website to consider suing the Plaintiff . . . nothing alleged in or attached to the Complaint" provided any plausible facts to support the confusion element of Plaintiff's

unfair competition claims." *Allied Interstate*, 2013 WL 4245987, at *6. Again, simply put, Seeger Weiss has never been nor will ever be a competitor of Vitamin Shoppe in any shape or form. Seeger Weiss is not in the business of selling any products, and the information on the website makes it clear that Vitamin Shoppe did not sponsor, or have any affiliation with, the site itself.

For the same reasons discussed previously, Vitamin Shoppe has not alleged any plausible factual support that Seeger Weiss' actions created a likelihood of confusion to visitors to their site. The website was designed to invite aggrieved consumers of the BodyTech products to consider whether they had legal claims to assert against Vitamin Shoppe, and could in no way be confused with the sale or marketing of the BodyTech products themselves. Thus, Vitamin Shoppe has no claim that Seeger Weiss engaged in unfair competition under either the Lanham Act or New York common law.

**D.      Fair Use Bars Vitamin Shoppe's Federal and New York Dilution Claims**

Counts III and VI of Vitamin Shoppe's Complaint allege that Seeger Weiss' use of the website, www.vitaminshoppeprotein.com, is likely to dilute and impair the distinctiveness of the Vitamin Shoppe mark. Complaint ¶¶ 94-95, 129-30. Vitamin Shoppe also alleges that Seeger Weiss's actions are likely to tarnish its reputation and goodwill associated with the Vitamin Shoppe trademark, and that Seeger Weiss' actions are likely to tarnish the business reputation of Vitamin Shoppe. Complaint ¶¶ 98, 131. These Counts are classic examples of a "formulaic recitation of the elements of the claim" because Vitamin Shoppe offers no facts, plausible or otherwise, to support its trademark dilution claims.

Under federal law, the owner of a "famous mark" can enjoin a person from using "a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment

of the famous mark."  15 U.S.C. § 1125(c)(1).  In order to establish a federal trademark dilution

claim, the plaintiff must show that:  (1) its mark is famous; (2) the defendant is making

commercial use of the mark in commerce; (3) the defendant's use began after the mark became

famous; (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the

capacity of the mark to identify and distinguish goods and services.  *Louis Vuitton Malletier*, 454

F.3d at 118.  The plaintiff must demonstrate actual dilution of its trademark, not merely a

likelihood of dilution.  *Mosely v. V Secret Catalogue*, 537 U.S. 418, 432-33 (2003).

The Lanham Act exempts from any federal trademark dilution claim a fair use of the

plaintiff's mark:

> The following shall not be actionable as dilution by blurring or dilution by
> tarnishment under this subsection:
>
> > (A)     Any fair use, including nominative or descriptive fair use, or
> > facilitation of such fair use, of a famous mark by another person other
> > than as a designation of source for the person's own goods or services,
> > including in connection with —
> >
> > > (i)     advertising or promotion that permits consumers to
> > > compare goods or services; or
> > >
> > > (ii)     identifying and parodying, criticizing, or
> > > commenting upon the famous mark owner or the goods or services
> > > of the famous mark owner.

15 U.S.C. § 1125(c)(3).  The use of a mark is "descriptive" where "the name or term is used to

describe the goods."  *JA Apparel Corp. v. Abboud*, 682 F.Supp.2d 294, 310 (S.D.N.Y. 2010)

(quoting *Cosmetically Sealed Industries, Inc. v Cheesebrough-Pond's USA Co.*, 125 F.3d 28, 30

(2d Cir. 1997)).  "Describ[ing] the goods" is not limited to a description of the characteristics of

the goods, but, rather, also allows the use of words or images in their descriptive sense.  *Id.*  The

nominative fair use defense is also available for a New York trademark dilution claim under

N.Y. Gen. Bus. Law § 360-l.[13]  *See JA Apparel*, 682 F.Supp.2d at 317; *Yurman Studio, Inc. v. Castaneda*, 591 F.Supp.2d 471, 489-90 (S.D.N.Y. 2008).

For all of the reasons set forth above relating to Vitamin Shoppe's trademark infringement and unfair competition claims, Seeger Weiss' use of Vitamin Shoppe's marks was likewise a fair use with respect to its federal trademark dilution claim as well.  Seeger Weiss was not using Vitamin Shoppe's marks as a designation of the source of its legal services.  Rather, it was "identifying and . . . criticizing or commenting upon" Vitamin Shoppe and its goods.  Likewise, as is explained above, Vitamin Shoppe and Body Tech are not identifiable by any other names, Seeger Weiss used no more of the marks than was necessary to identify the company and the product, and no reasonable consumer could be confused as any affiliation between Vitamin Shoppe and Seeger Weiss.

**E.**    **Vitamin Shoppe's Marks Are Not Famous**

Although Vitamin Shoppe's marks, by definition, have secondary meaning because they are incontestable, incontestability does not make them "famous" for purposes of a federal trademark dilution claim[14] or a cybersquatting claim.  In order to be "famous", the mark must have both a significant degree of *inherent* distinctiveness and a high degree of *acquired* distinctiveness.  *Savin*, 391 F.3d at 449 (emphasis in original).  "It is not enough for a trademark holder to show that the mark has acquired secondary meaning.  Rather, the plaintiff must

---

[13]    One element of a New York dilution claim that is not present in a federal dilution claim is that there must be a likelihood of confusion.  *See Louis Vuitton Malletier*, 454 F.3d at 119.  For the reasons set forth above, there is no likelihood of confusion arising from Seeger Weiss' use of Vitamin Shoppe's marks.

[14]    Although New York law does not require that a mark be "famous," nonetheless the mark "must be an extremely strong mark either because of its inherently distinctive qualities or the fact that it has acquired secondary meaning."  *Mobileye, Inc. v. Picitup Corp.*, 928 F.Supp.2d 759, 782 (S.D.N.Y. 2013).

demonstrate that the mark is *inherently distinctive* to prevail under the FTDA." *Louis Vuitton Malettier v. Dooney & Bourke*, 561 F.Supp.2d 368, 380 (S.D.N.Y. 2008) (emphasis in original). As the Second Circuit has explained, descriptive marks, such as Vitamin Shoppe, are not sufficiently distinctive to qualify as being a "famous mark":

> In our view, the language of the Act, specifying the need for a showing of dilution of the "distinctive quality" of the plaintiff's mark, and inviting the court to assess its "degree" of distinctiveness, is entirely consistent with the policies rooted in traditional trademark law that have always disfavored non-distinctive, descriptive marks, because their enforcement tends to deprive others of the opportunity to use proper descriptions of their products. We conclude that the Dilution Act accords its special, broad protection only to marks that have a significant degree of distinctiveness.

*TCPIP*, 244 F.3d at 95. "All of these reasons lead us to the conclusion that descriptive marks, which possess no distinctive quality, or at best a minimal degree, do not qualify for the Act's protection. 'The Children's Place,' for stores selling children's merchandise, is such a mark." *Id.* at 96.

A descriptive mark, such as Vitamin Shoppe, is not sufficiently distinctive to qualify as being a "famous mark" and is thus not entitled to protection either under the trademark dilution statute or the cybersquatting statute.  Vitamin Shoppe is a business devoted to the sale of vitamins and other similar nutritional supplements.  The Vitamin Shoppe mark describes what Vitamin Shoppe is:  a vitamin shop. *Compare TCPIP*, 244 F.3d at 93 ("A store that specializes in children's merchandise is a children's place—a place that sells children's merchandise, a place to buy what children need.  The use of the words "children's place" as a mark for such a store is thus highly descriptive."); *N.Y. Stock Exchange, Inc. v. New York, New York Hotel LLC*, 293 F.3d 550, 557 (2d Cir. 2002) (all of New York Stock Exchange trademarks, except for combination of NYSE logo and façade of building, not inherently distinctive for trademark

dilution protection).  As a descriptive mark, Vitamin Shoppe is not entitled to the protections of a "famous mark".

Moreover, neither Vitamin Shoppe nor BodyTech is sufficiently well known to qualify as famous.  Only marks approaching the level of household names qualify as "famous".  *Friesland Brands, B.V. v. Vietnam National Milk Co.*, 228 F.Supp.2d 399, 412 (S.D.N.Y. 2002).  Also, the degree of fame required for protection under the Dilution Act must exist in the general marketplace, not just in a niche market.  *Louis Vuitton Malettier*, 561 F.Supp.2d at 381.   "Thus, fame limited to a particular channel of trade, segment of industry or service, or geographic region is not sufficient to meet that standard." *Id.*  As this Court noted:

> [[T]he inclusion in the TDRA of the phrase "widely recognized by the general consuming public of the United States" was intended to reject dilution claims based on niche fame, *i.e.* fame limited to a particular channel of trade, segment of industry or service, or geographic region.  One of the major purposes of the TDRA was to restrict dilution causes of action to those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie Dolls, and the like.

*Luv N'Care, Ltd. v. Regent Baby Products Corp.*, 841 F.Supp.2d 753, 757-58 (S.D.N.Y. 2012) (internal citations and quotations omitted).

Vitamin Shoppe has not pleaded facts, as opposed to conclusions, that either Vitamin Shoppe or BodyTech are "famous" marks for purposes of Lanham Act's anti-dilution provisions. It alleges that it has 500 stores nationwide,[15] Complaint, ¶ 11, plus offers products for sale via its website.   Complaint, ¶ 13.   While Vitamin Shoppe alleges that it has annual sales of approximately $1 billion, Complaint, ¶ 14, it also alleges that it spends only $400,000 annually

---

[15]     Vitamin Shoppe's claim to be a "nationwide" chain is exaggerated.  It has stores in 45 states, the District of Columbia, and Puerto Rico, but the stores are concentrated in the more populous states.  Aside from the fact that there is no Vitamin Shoppe store to be found in five states, D.C., Idaho, Maine, Oklahoma, and Vermont each have only one store; Arkansas, Delaware, Nebraska, New Mexico and Utah only two stores each; and Iowa, Kansas, and Puerto Rico only three stores each.  *See* http://www.vitaminshoppe.com/content/en/stores/index.jsp.

on advertising.  Complaint, ¶ 17.  *Compare*, *e.g.*, *Luv N'Care*, 841 F.Supp.2d at 757 (Nike spent over $1 billion in advertising; $350 million advertising Hot Wheels toy cars); *Savin*, 391 F.3d at 439 (Savin spent $20 million annually in advertising; Nabisco spent $120 million in advertising over three years).  There are no allegations in the Complaint that Vitamin Shoppe is known beyond its niche market.  In addition, Vitamin Shoppe's allegations relating to its "fame" are addressed only to Vitamin Shoppe itself.  There are no allegations whatsoever as to how widely its BodyTech product is recognized – certainly not to the level of being a household name, rather being known in the protein supplement niche of the vitamin/nutritional supplement niche market.

Importantly, Vitamin Shoppe expressly pleads that there is a *likelihood* of dilution of its marks, Complaint, ¶¶ 94-98, not that there has been an *actual* dilution of its marks (much less any facts to reasonably support an inference of actual dilution), as required by the Supreme Court in *Mosely*.  Although Vitamin Shoppe might arguably be able to correct the pleading deficiencies with respect to whether its marks are sufficiently well known to be "famous" and as to whether its trademarks have suffered actual dilution, it cannot plead around the fact that Seeger Weiss' use of its marks was a fair use, or that Vitamin Shoppe is a descriptive mark that is not inherently distinctive to qualify as a famous mark.

**G.     Seeger Weiss Did Not Engage In Cybersquatting
         Under § 43(d) Of The Trademark Act**

Count IV of Plaintiff's Complaint alleges that Seeger Weiss had in bad faith intended to profit from the Vitamin Shoppe's trademark through the use of metatags and the www.vitaminshoppeprotein.com website that would divert consumers to the website, thus harming the goodwill of the Vitamin Shoppe, and giving rise to a claim for cybersquatting.  Just as the counts discussed above fail to assert any viable claims against Seeger Weiss, this count fails as well.

"Cybersquatting" involves the registration of a domain name of well-known trademarks by non-trademark holders who then try to sell the names back to the trademark owners. *Sporty's Farm LLC v. Sportsman's Market, Inc.*, 202 F.3d 489, 493 (2d Cir. 2000); *Web-Adviso v. Trump*, 927 F.Supp.2d 32, 38 (E.D.N.Y. 2013). To properly state a claim for cybersquatting under 15 U.S.C. §1125(d), the "plaintiff must be the owner of a 'famous mark' and show; (1) that a domain name 'is identical or confusingly similar to, or dilutive of' the owner's mark; and (2) that the defendant registered the domain name with a 'bad faith intent to profit' from the name." *Cintas*, 601 F.Supp.2d at 580.

With respect to the "bad faith" element, the statute lists nine non-exclusive factors for a court to consider in determining whether a defendant has acted in bad faith:

> (I)     the trademark or other intellectual property rights of the person in the domain name;

> (II)     the extent to which the domain name consists of the legal name of the person or a name that is otherwise used to identify that person;

> (III)     the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

> (IV)     the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

> (V)     the person's intent to divert customers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

> (VI)     the person's offer to transfer, sell or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

> (VII)     the person's provision of material or misleading false contact information when applying for the registration of the domain name, the person's

intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII)  the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names ..., without regard to the goods and services of the parties; and

(IX)    the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of the section.

15 U.S.C. § 1125(d)(1)(B)(i).

Measured against these factors, Vitamin Shoppe's cybersquatting count, Complaint ¶¶ 102-12, fails.  First, as is set forth in the preceding section, Vitamin Shoppe is not distinctive or famous, which is the first element of a cybersquatting claim.[16]  15 U.S.C. § 1125(d)(1)(A)(i). Because the Vitamin Shoppe mark is not famous, the Court need go no further in analyzing Vitamin Shoppe's cybersquatting claim.

Even assuming *arguendo*, however, that Vitamin Shoppe were famous, its cybersquatting claim fails the statutory bad faith test.  Applying the statutory factors for determining bad faith, it is true that (I) Seeger Weiss had no trademark rights in the domain name, (II) the domain name was not that of Seeger Weiss, and (III) Seeger Weiss hadn't previously offered goods and services under that name.  However,  the remaining factors weigh heavily in favor of Seeger Weiss.

As explained above, Seeger Weiss' use of Vitamin Shoppe's marks in the website was a fair use.  15 U.S.C. § 1125(d)(1)(B)(i)(IV).  In its complaint, Vitamin Shoppe concentrates on factor V, which is the use of a website accessible under the domain name for commercial gain.

---

[16]      There is a presumption that an incontestable mark is inherently distinctive.  *Sporty's*, 202 F.3d at 497.  That presumption is overcome, however, if the mark is merely descriptive.  *See Savin*, 391 F.3d at 451 (citing *TCPIP*, 244 F.3d at 96).

Vitamin Shoppe complains of Seeger Weiss' use of metatags in the website, Complaint, ¶ 108, but the use of metatags is not covered by the cybersquatting statute. *Bihari*, 119 F.Supp.2d at 316. It further alleges that Seeger Weiss intended to divert customers from Vitamin Shoppe's website, Complaint ¶ 109, and lure customers to its own website, Complaint ¶ 110, "for commercial gain, with intent to tarnish or disparage the trademark THE VITAMIN SHOPPE, and by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the website <vitaminshoppeprotein.com>." There is no more likelihood of confusion, however, as to the source, sponsorship, affiliation, or endorsement of the Seeger Weiss website for purposes of a cybersquatting claim than for a trademark infringement or unfair competition claim. No reasonable consumer could be confused that Seeger Weiss' website seeking disgruntled Vitamin Shoppe customers would somehow be affiliated with Vitamin Shoppe.

Moreover, Vitamin Shoppe does not allege – nor could it in good faith because it did not happen – that Seeger Weiss offered to sell Vitamin Shoppe the domain name for financial gain without having used it, or any prior pattern of similar conduct (factor VI). Rather, the opposite is true: Seeger Weiss offered to transfer the domain name to Vitamin Shoppe at no charge. *See* Section H, *infra*. Similarly, Seeger Weiss did not provide misleading contact information relating to the domain name (factor VII); nor has Seeger Weiss registered domain names containing the marks of other famous trademark owners (factor VIII). Finally, Vitamin Shoppe's mark is not distinctive or famous (factor IX), for the reasons set forth in Section E above.

Furthermore, Seeger Weiss' actions do not fall within the concept of cybersquatting and Vitamin Shoppe's cybersquatting allegations selectively identify only a portion of the factors to be considered in determining whether the registrant of a domain name has acted in bad faith for

purposes of the cybersquatting statute.   Indeed, Vitamin Shoppe's cybersquatting claim is nothing more than a repackaging of its trademark infringement, unfair competition, and trademark dilution claims.  It is meritless for the same reasons as are those theories.

Taking all of the factors into account, which Vitamin Shoppe does not in its complaint, Vitamin Shoppe's cybersquatting claim is meritless and cannot be rescued by any repleading. As a result, its cybersquatting claim should be dismissed with prejudice.

**H.**     **Vitamin Shoppe's Claim For A Permanent Injunction Is Moot**

Vitamin Shoppe is not entitled to any injunctive relief, permanent or preliminary, because if faces no threat – or possible threat – of irreparable harm.   A permanent injunction is appropriate where the party seeking the injunction has succeeded on the merits and shows the absence of an adequate remedy at law and irreparable injury if the relief is not granted.  *Patsy's Italian Restaurant, Inc. v. Banas*, 658 F.3d 254, 272 (2d Cir. 2011); *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006); *U.S. Polo Association, Inc. v. PRL USA Holdings, Inc.*, 800 F.Supp.2d 515, 539 (S.D.N.Y. 2011).  Permanent injunctive relief will be granted only upon proof of the likelihood that purchasers of the product may be misled in the future.  *Burdy Corp. v. Teledyne Industries, Inc.*, 748 F.2d 767, 772 (2d Cir. 1984).

Vitamin Shoppe cannot satisfy either of these prongs.   First, for all of the reasons discussed above, Vitamin Shoppe cannot succeed on the merits.   Second, there is no likelihood that potential Vitamin Shoppe customers could be misled in the future. Seeger Weiss has taken down the website *www.vitaminshoppeprotein.com* and it offered to transfer the domain name to Vitamin Shoppe at no charge, thus eliminating the allegedly offending conduct in which Seeger Weiss supposedly engaged.  Vitamin Shoppe never responded to that offer.  *See* Declaration of Christopher A. Seeger, dated February 10, 2014 (filed contemporaneously herewith), ¶ 3.  In the

absence of the website and its related sponsored links, there is absolutely no likelihood that potential consumers and customers could be misled in the future.  In short, Vitamin Shoppe's injunctive relief claim is moot.  As a result, it is not entitled to any injunctive relief.

For the same reasons, Vitamin Shoppe would not be entitled to a preliminary injunction. A preliminary injunction cannot issue unless the plaintiff faces harm that is both *irreparable* and *imminent*.  *E.g.*, *Henrietta D. v. Bloomberg*, 331 F.3d 261, 290 (2d Cir. 2003) ("A plaintiff seeking injunctive relief bears the burden of demonstrating it will suffer 'real and imminent, not remote, irreparable harm' in the absence of a remedy.") (citing cases); *Reuters Ltd. v. United Press International, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990).

## CONCLUSION

Based upon the foregoing reasons, the Court should dismiss Vitamin Shoppe's complaint for failure to state a claim and its injunctive relief claims for mootness.  The Court's dismissal for failure to state a claim should be with prejudice, because no amendment can cure the pleading deficiencies in the complaint.

Respectfully submitted,

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700
*Attorneys for Defendant*


By:____/s/ James E. Cecchi_____
        JAMES E. CECCHI

Dated:  February 10, 2014

25